## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

_____

| | | |
|---|---|---|
| MARIO JACKSON, Individually and on behalf of himself and all others similarly situated, | ) ) ) | Case No. _____ |
| **Plaintiff,** | ) ) | Judge: _____ |
| v. | ) ) | |
| CARRIER IQ, INC., a Delaware Corporation; and HTC AMERICA, INC., a Washington Corporation. | ) ) ) | **CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |
| **Defendants.** | ) | |

_____

Plaintiff Mario Jackson ("Plaintiff"), individually and on behalf of himself and all others similarly situated, by his undersigned attorneys, alleges upon personal knowledge as to himself, and upon information and belief (based upon investigation of counsel) as to all other matters, as to which allegations Plaintiff believes substantial evidentiary support for will exist after a reasonable opportunity for further investigation and discovery, as follows:

### INTRODUCTION

1.      Defendant Carrier IQ, Inc. ("CIQ" or "Carrier IQ") and Defendant HTC America, Inc. ("HTC America") (collectively referred to herein as "Defendants") have unlawfully intercepted private electronic communications emanating from private cellular phones, handsets and smartphones. CIQ created and provided software that is embedded on cellular phones manufactured by HTC America.

### PARTIES, JURISDICTION AND VENUE

2.      Mario Jackson is a natural person and citizen and resident of the State of Ohio.

3.      Plaintiff is a resident of the City of Warrensville Heights, Cuyahoga County, Ohio.

4.      All references to "Plaintiff" throughout this Complaint are made on behalf of the named Plaintiff Mario Jackson and the proposed Class(es), and vice versa.

5.       The amount in controversy in this action, as defined by 28 U.S.C. §1332(d)(6), exceeds $5,000,000 exclusive of costs and interest.

6.       Defendant, Carrier IQ is a citizen of California as defined by 28 U.S.C. § 1332(c) with its principal place of business in California.

7.      Defendant HTC America is a citizen of Washington, with their principal place of business in Bellevue, Washington.  HTC America sells its products throughout the United States, including throughout Ohio.

8.      CIQ and HTC America have ongoing and systematic contacts with residents of the State of Ohio.  CIQ and HTC America have, at all material times, conducted business in the State of Ohio.  Moreover, all Defendants have sufficient minimum contacts with the State of Ohio such that the assumption of jurisdiction will not offend traditional notions of fair play and substantial justice.

9.      When reference in this Complaint is made to any act or omission of Defendants, it should be deemed to mean that the officers, directors, agents, employees, or representatives of all Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of all Defendants, and did so while acting within the scope of their employment or agency.

10.     This court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 in that Plaintiff alleges violations of federal law, namely the Federal Wiretap Act as amended by the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

11.     This Court has personal jurisdiction over the Defendants in this action by way of the fact that Defendants are licensed to do business in the state of Ohio or otherwise conduct business in the state of Ohio.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) inasmuch as unlawful practices are alleged to have been committed in federal judicial district and Defendants reside or regularly conduct business in this district.

## STATEMENT OF FACTS

### A.      Carrier IQ

13.      CIQ is the leading provider of mobile services intelligence solutions to the wireless industry.

14.      CIQ claims on their website: "[a]s the only embedded analytics company to support millions of devices simultaneously, we give wireless carriers and handset manufacturers unprecedented insight into their customers mobile experience."

15.      CIQ uses software in mobile phones to measure performance and user experience with no visible notice or impact to the user.

16.      CIQ's data processing center collects the data for near real-time monitoring and intelligence.

17.     CIQ is the only company in the industry embedding diagnostic software in millions of mobile phones, having done so in over 141 million phones globally, as of December 9, 2011.

18.     CIQ further states on their website that their software answers business critical questions including: "How do users respond to mobile advertising."[1]

19.     CIQ's website further states that their software features include "View application and device feature usage, such as camera, music, messaging, browser and TV."[2]

20.     CIQ further states that their services give "a uniquely powerful insight into mobile service quality and user behavior."[3]

21.     CIQ further states that their software "uses data directly from the mobile phone itself to give a precise view of how users interact with both their phones and the services delivered through them, even if the phone is not communicating with the network."[4]

22.     CIQ further avers its software will help to "[i]dentify exactly how your customers interact with services and which ones they use.  See which content they consume, even offline."[5]

**B. Discovery of Carrier IQ's interception of electronic communications**

23.     In November 2011, a software developer named Trevor Eckhart electronically published his discovery of key logging activities associated with CIQ software on his HTC brand smartphone cellular device.

24.      Based on Eckhart's initial reports, CIQ software embedded in smartphone cellular devices, such as devices manufactured by HTC America, may be capable of recording

---

[1] http://www.wired.com/images_blogs/threatlevel/2011/12/ExperienceManager.datasheet-1.pdf Retrieved 12/9/11
[2] http://www.wired.com/images_blogs/threatlevel/2011/12/ExperienceManager.datasheet-1.pdf Retrieved 12/9/11
[3] http://www.carrieriq.com/overview/mobileservice/index.htm Retrieved 12/9/11
[4] http://www.carrieriq.com/overview/IQInsightExperienceManager/index.htm Retrieved 12/9/11
[5] http://www.carrieriq.com/overview/IQInsightExperienceManager/index.htm  Retrieved 12/9/11

the following: 1) Key in HTC Dialer (pressed or hardware keys); 2) App opened; 3) SMS Received; 4) Screen Off/On; 5) Call Received; 6) Media statistics; 7) Location statistics.[6]

25.    Eckhart has cautioned that CIQ software is very difficult to remove from a cellular device.  He stated: "The only way to remove Carrier IQ is with advanced skills. If you choose to void your warranty and unlock your bootloader you can (mostly) remove Carrier IQ."[7]

26.    A CIQ representative has been quoted in response to the privacy concerns. Andrew Coward, the marketing officer, stated: "We're as surprised as anybody to see all that information flowing.  It raises a lot of questions for the industry-and not (only) for Carrier IQ".[8] He also stated that: "We do recognize the power and value of this data.  We're very aware that this information is sensitive.  It's a treasure trove….We're seeing URLS and we can capture that information".[9]

27.    In an interview with Wired.com, Andrew Coward of Carrier IQ answered "probably yes" when asked if CIQ software could read mobile users' text messages.[10]

28.    In an effort to further substantiate his claims about CIQ software, Mr. Eckhart published further analysis in a reported titled "Carrier IQ Part 2."[11] This report includes a 17 minute video in which he found evidence that CIQ software did, in fact log his key strokes, record his SMS text messages, record dialed numbers, and tracked his internet use, including on HTTPS (secure) websites.[12]

29.    Andy Greenberg, reporting for *Forbes*, wrote:

> As Eckhart's analysis of the company's training videos and the
> debugging logs on his own HTC Evo handset have shown, Carrier

---

[6] http://www.geek.com/articles/mobile/how-much-of-your-phone-is-yours-20111115/ Retrieved 12/9/11
[7] http://androidsecuritytest.com/features/logs-and-services/loggers/carrieriq/ Retrieved 12/9/11
[8] http://money.cnn.com/2011/12/02/technology/carrier_iq/index.htm Retrieved 12/9/11
[9] http://www.wired.com/threatlevel/2011/12/carrier-iq-data-vacuum/ Retrieved 12/9/11
[10] http://www.wired.com/threatlevel/2011/12/carrier-iq-backlash/ Retrieved 12/9/11
[11] http://androidsecuritytest.com/features/logs-and-services/loggers/carrieriq/carrieriq-part2 Retrieved 12/9/11
[12] http://www.youtube.com/watch?v=T17XQI_AYNo&feature=player_embedded Retrieved 12/9/11

IQ captures every keystroke on a device as well as location and other data, and potentially makes that data available to Carrier IQ's customers. The video he's created (below) shows every keystroke being sent to the highly-obscured application on the phone before a call, text message, or Internet data packet is ever communicated beyond the phone. Eckhart has found the application on Samsung, HTC, Nokia and RIM devices, and Carrier IQ claims on its website that it has installed the program on more than 140 million devices.[13]

30.     CIQ captures and records every keystroke entered on the mobile device, as well as location and other data.

31.     HTC America produces mobile phones and handsets "Android" smart phones.

32.     The CIQ software at issue is embedded in HTC Android phones.

33.     The information collected by CIQ is transmitted to various service providers, including Sprint, AT&T and T-Mobile.

34.     Plaintiff currently (and for the past several months) has owned and used a HTC EVO. This device is embedded with the CIQ software. Plaintiff regularly sends and receives SMS (text) messages on his HTC device.  By virtue of the unknown, not assented-to, automatic, and unpreventable functions of the CIQ software, Plaintiff's private and personal communications have been illegally intercepted and transmitted by and to Defendants Carrier IQ and HTC America.

35.     All Defendants intercepted, recorded and collected information regarding the substance, purport, or meaning of the electronic communications transmitted without the authorization of the parties to those communications.

---

[13] http://www.forbes.com/sites/andygreenberg/2011/11/30/phone-rootkit-carrier-iq-may-have-violated-wiretap-law-in-millions-of-cases/ Retrieved 12/9/11

36.     All Defendants intercepted, recorded and collected information concerning the substance, purport, or meaning of the electronic communications transmitted without the authorization of the parties to those communications.

37.     During all times relevant, Plaintiff used and maintained a cellular phone on the Sprint wireless network.

38.     Plaintiff and Class Members, as defined below, were unaware of Defendant's wrongful conduct, and unable to discover it until December 2011, as Defendants conduct by nature was secret and concealed.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action on his own behalf and as a nationwide class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of a Nationwide Class defined as:

### NATIONAL CLASS

All United States residents who operate a cellular phone device manufactured by Defendant HTC America on which, Carrier IQ, software was installed or embedded that collected electronic communications. Excluded from the class are: any Judge conducting proceedings in this action and their parents, spouses and children; counsel of record in this action; the legal representatives, heirs, successors and assigns of any excluded person.

40.     Plaintiff further seeks to represent a Ohio Subclass defined as:

### OHIO SUBCLASS

All United States residents, who reside in the State of Ohio who operate a cellular phone device manufactured by Defendant HTC America on which, Carrier IQ, software was installed or embedded that collected electronic communications. Excluded from the class are: any Judge conducting proceedings in this action and their parents, spouses and children; counsel of record in this action; the

legal representatives, heirs, successors and assigns of any excluded
person.

41.     Certification of Plaintiff's claims for class-wide treatment is appropriate because
Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as
would be used to prove those elements in individual actions alleging the same claims.

42.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the
National Class and Ohio Subclasses are so numerous that their individual joinder herein is
impracticable.  Plaintiff is informed and believes that there are millions of individuals throughout
the United States who use Defendants' cellular devices.  The precise number of National Class
and Ohio Subclass members and their addresses is unknown to Plaintiff; however, the National
Class and Ohio Subclass members may be notified of the pendency of this action by recognized,
Court-approved notice dissemination methods, which may include U.S. mail, electronic mail,
Internet postings, and/or published notice.

43.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2)
and 23(b)(3).**  Common questions of law and fact exist as to all National Class and Ohio
Subclass members and predominate over questions affecting only individual Class and Ohio
Subclass members.  Such common questions of law or fact include:

    a.      whether the data collected from Plaintiff's cellular phone device are
            electronic communications protected by the Federal Wiretap Act;

    b.      whether Defendants' interception of data collected from Plaintiff's cellular
            phone device was intentional within the meaning of the Federal Wiretap
            Act;

    c.      the proper measure of damages under the Federal Wiretap Act;

    d.      whether the data collected from Plaintiff's cellular phone device violated
            Ohio State law; and

e.  whether Plaintiff and all other National Class and Ohio Subclass members are entitled to declaratory and/or injunctive relief.

44.  Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and all other National Class and Ohio Subclass members.  Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

45.  **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the claims of all other National Class and Ohio Subclass members because, among other things, all National Class and Ohio Subclass members were comparably injured through Defendants' uniform misconduct described above.  Further, there are no defenses available to Defendants that are unique to Plaintiff.

46.  **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate National Class and Ohio Subclass representative because his interests do not conflict with the interests of the other National Class and Ohio Subclass members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and Plaintiff will prosecute this action vigorously.  The National Class and Ohio Subclass's interests will be fairly and adequately protected by Plaintiff and his counsel.

47.  **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and all other National Class and Ohio Subclass members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the National Class and Ohio Subclass as a whole.

48.  **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy,

and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriments suffered by Plaintiff and all other National Class and Ohio Subclass members are relatively small compared to the burden and expense that would be required to individually litigate their claims against the Defendants, so it would be impracticable for National Class and Ohio Subclass members to individually seek redress for the Defendants' wrongful conduct.  Even if National Class and Ohio Subclass members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Given the similar nature of the National Class and Ohio Subclass members' claims, class treatment of this litigation will ensure that all claims and claimants are before this Court for consistent adjudication thereof and will be easily managed by the Court and the parties to this action.

## FIRST CAUSE OF ACTION
### (Violation of the Federal Wiretap Act,
### <u>18 U.S.C. §2510 *et seq.*</u>)

49.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

50.     Plaintiff brings this claim on their own behalf and on behalf of each member of the Class.

51.     The Omnibus Crime Control and Safe Streets Act of 1968 is also known as the Federal Wiretap Act, 18 U.S.C. §2510 *et seq*. Section 2511 provides in pertinent part:

> "[A]ny person who…intentionally intercepts, endeavors to
> intercept, … any wire, oral or electronic communication; … shall

10

be punished as provided in subsection (4) or shall be subject to suit
as provided in subsection (5)."

52.     At all times relevant, Plaintiff, the National Class and Ohio Subclass members

were persons entitled to the protection of 18 U.S.C. §2511 as they were individuals who were

parties to electronic communications.

53.     On information and belief, Defendants, by way of the Carrier IQ software have

intentionally intercepted, endeavored to intercept, or procured others to intercept or endeavor to

intercept, wire and/or electronic communications as described, all without knowledge, consent or

authorization of Plaintiff or the National Class in violation of 18 U.S.C. §2511(1) on more than

one occasion. The intercepted information concerns the substance, purport or meaning of

Plaintiff's electronic communication.

54.     On information and belief, Defendants, by way of the Carrier IQ software, have

intentionally disclosed or endeavored to disclose, to other persons the contents of wire and/or

electronic communications, knowing or having reason to know that information was obtained

through the interception of wire or electronic communications. Defendants have violated 18

U.S.C. §2511(1).

55.     As a result of these violations of law, Plaintiff and the National Class members

have suffered harm and injury, including the interception and transmission of private and

personal communications.

56.     As a result of these violations, Defendants are subject to civil suit as described in

Section 2520 of the Federal Wiretap Act, which provides that:

"[A]ny person whose wire, oral, or electronic communication is
intercepted, disclosed, or intentionally used in violation of this
chapter may in a civil action recover from the person or entity, …
which engaged in that violation such relief as may be appropriate.
In an action under this section, appropriate relief includes—

> (1) such preliminary and other equitable or declaratory relief as may be appropriate;
> (2) damages under subsection (c) and punitive damages in appropriate cases; and
> (3) a reasonable attorney's fee and other litigation costs reasonably incurred.

* * *

> [T]he court may assess as damages whichever is the greater of – (A) the sum of the actual damages suffered by plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 day for each violation or $10,000."

57.     As a result of these violations of law Plaintiff and the National Class members are entitled to appropriate relief including relief set forth in Section 18 U.S.C. §2520.

**SECOND CAUSE OF ACTION**
**(Violation of the Ohio Wiretap Statutes**
**Ohio Revised Code §§ 2933.52 – 2933.65)**

58.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

59.     Plaintiff brings this claim on their own behalf and on behalf of each member of the Class.

60.     The Ohio Wiretap Statute provides in pertinent part:

> No person purposely shall do any of the following:
>
> (1) Intercept, attempt to intercept, or procure another person to intercept or attempt to intercept a wire, oral, or electronic communication;
>
> (2) Use, attempt to use, or procure another person to use or attempt to use an interception device to intercept a wire, oral, or electronic communication, if either of the following applies:

(a) The interception device is affixed to, or otherwise transmits a signal through, a wire, cable, satellite, microwave, or other similar method of connection used in wire communications;

(b) The interception device transmits communications by radio, or interferes with the transmission of communications by radio.

(3) Use, or attempt to use, the contents of a wire, oral, or electronic communication, knowing or having reason to know that the contents were obtained through the interception of a wire, oral, or electronic communication in violation of sections 2933.51 to 2933.66 of the Revised Code.

61.  At all times relevant, Plaintiff and the Ohio Subclass members were entitled to the protection of §2933.52 as they were individuals who were parties to electronic communications.

62.  On information and belief, Defendants, by way of the Carrier IQ software have purposely intercepted, attempt to intercepted, or procured another person to intercept or attempt to intercept a wire, oral, or electronic communication as described, all without knowledge, consent or authorization of Plaintiff or the Ohio Subclass members in violation of the Ohio Wiretap Statute on more than one occasion. The intercepted information concerns the substance, purport or meaning of Plaintiff's or the Ohio Subclass members' electronic communication.

63.  As a result of these violations of law, Plaintiff and the Ohio Subclass members have suffered harm and injury, including the interception and transmission of private and personal communications.

64.  As a result of these violations, Defendants are subject to civil suit as described in Section 2933.65 of the Ohio Wiretap Statute, which provides that

65.  Ohio Revised Code Section 2933.65 provides in pertinent part:

(A) A person whose wire, oral, or electronic communications are intercepted, disclosed, or intentionally used in violation of sections 2933.51 to 2933.66 of the Revised Code may bring a civil action to

recover from the person or entity that engaged in the violation any relief that may be appropriate and that includes, but is not limited to, the following:

> (1) The preliminary and other equitable or declaratory relief that is appropriate;
>
> (2) Whichever of the following is greater:
>
>> (a) Liquidated damages computed at a rate of two hundred dollars per day for each day of violation or liquidated damages of ten thousand dollars, whichever is greater;
>>
>> (b) The sum of actual damages suffered by the plaintiff and the profits, if any, made as a result of the violation by the person or entity that engaged in the violation.
>
> (3) Punitive damages, if appropriate;
>
> (4) Reasonable attorney's fees and other litigation expenses that are reasonably incurred in bringing the civil action.

66.     As a result of these violations of law Plaintiff and the Ohio Subclass members are entitled to appropriate relief including relief set forth in Section 2933.65 of the Ohio Revised Code.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, on his own behalf and on behalf of the other members of the National Class and Ohio Subclass respectfully request that this Honorable Court enter judgment against Defendants, awarding the following relief:

(A)     An Order certifying this action as a class action (and certifying, if necessary, appropriate subclasses), appointing Plaintiff Class Representative for the National

Class and the Ohio Subclass and his counsel as Class Counsel for the National

Class and Ohio Subclass;

(B)     Injunctive and declaratory relief as deemed appropriate;

(C)     Declaring that Defendants' collection of electronic communications violate 18

U.S.C. §2511 and Ohio Revised Code §2933.52;

(D)     Statutory damages and such other relief as provided by the applicable statutes,

including attorneys' fees;

(E)     Punitive damages for Defendants' malicious, intentional, gross, oppressive,

aggravated conduct, or any conduct that involved a breach of trust or confidence.

(F)     Prejudgment and post-judgment interest on such monetary relief;

(G)     The costs of bringing this suit, including reasonable attorneys' fees and costs

where allowed by law; and

(H)     All other relief to which Plaintiff, the National Class and Ohio Subclass may be

entitled and which the Court deems proper.


## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff and other members of the

National Class and Ohio Subclass demand a trial by jury on all claims in this Complaint so

triable.

Dated: December 22, 2011

Respectfully Submitted,

*/s/ John R. Climaco*

John R. Climaco (0011456)
jrclim@climacolaw.com

15

John A. Peca (0011447)
japeca@climacolaw.com
**CLIMACO, WILCOX, PECA,**
**TARANTINO & GAROFOLI CO., LPA**
55 Public Square, Suite 1950
Cleveland, Ohio 44113
P: 216.621.8484
F: 216.771.1632

Patrick G. Warner (0064604)
pgwarn@climacolaw.com
**CLIMACO, WILCOX, PECA,**
**TARANTINO & GAROFOLI CO., LPA**
35 North Fourth Street, Suite A
Columbus, Ohio 43215
P: 614.437.2522
F: 614.386.1029

D. Scott Kalish (0063002)
scottkalishcollc@cs.com
James Deese
jasdeese@sbcglobal.net
**SCOTT KALISH CO., LLC**
1468 West 9th Street, Suite 405
Cleveland, Ohio 44113
P:  216.502.0570
F:  216.502.0569

*Counsel for Plaintiff Mario Jackson*